## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

KEITH LARON DURR,

      Petitioner,

v.

SHERRY BURT,

      Respondent.

_____/

Case No. 1:16-CV-10628

Honorable Thomas L. Ludington

United States District Judge

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Keith Laron Durr, presently incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was jointly tried with his codefendant before a jury in the Wayne County Circuit Court. He was found guilty of one count of first-degree felony murder, Mich. Comp Laws § 750.316(1)(b), and arson of a dwelling house, Mich. Comp Laws § 750.72. Petitioner was sentenced to concurrent terms of life imprisonment for the felony-murder conviction and 7 ½ to 25 years imprisonment for the arson conviction. Respondent has filed an answer to the petition, asserting that the claims lack merit and/or are procedurally defaulted. Petitioner's claims are without merit. The petition will be denied.

## I.

The facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), are as follows. *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendants' convictions arise from a dispute between Durr and his ex-girlfriend, Loretta Smith (Smith). The couple ended their relationship in 2009, but

encountered each other at a block party on July 10, 2010. The testimony by witnesses at the party varied regarding the number and timing of encounters between the two. However, following one physical encounter, Durr threatened to kill Smith; one witness heard Durr threaten to burn Smith's home down. Durr left the party with Moore. Shortly after the defendants' departure, Smith left the party and returned to her home to find it on fire. A two-year-old child in the home died from smoke inhalation. Detroit fire investigators labeled the cause of the fire as "undetermined."

A witness, Heather Warddell (Warddell), who was then the girlfriend of Durr's friend, Michael Branden Ayers–Ellis (Branden), testified that after Moore and Durr left the party, she and Branden followed them in her own car, with Branden driving. Defendants proceeded to a gas station, exited carrying a metal can of lighter fluid, and drove to the side street near Smith's home. They entered the alley near Smith's home with the lighter fluid, but she could not recall which defendant carried the fluid out of the gas station or into the alley. She fought with Branden to prevent him from proceeding into the alley with defendants. Three neighbors corroborated Warddell's testimony regarding the presence of men in the alley, and one of those neighbors identified Durr as one of the men in the alley. Shortly after defendants left the alley, witnesses saw smoke coming from Smith's home. Smith's daughter, Jessica Smith (Jessica), who was at the home babysitting the two-year-old victim and a four-year-old child, NT, testified that she was unable to rescue the victim from the smoke and fire. Other witnesses testified that Jessica was outside with NT, walking and talking on her phone, before the fire started. After learning of the death of the victim, Warddell spoke with Durr, who made statements to her to the effect that she should keep her mouth shut and that he had "a crazy family." She interpreted these statements as threats. The following day, after learning that a child had been killed in the fire, Warddell and Branden left the area for several months, because Branden felt that "his name was probably in the streets" as being involved with the fire. Despite alleging that they were falsely accused and challenging the credibility of Warddell's testimony, defendants were convicted as charged.

*People v. Moore*, No. 313565, 2014 WL 4087921, at *1 (Mich. Ct. App. Aug. 19, 2014).

Petitioner's convictions were affirmed on appeal. *Id., lv. den.* 497 Mich. 982, 861 N.W.2d 35 (2015).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.   Mr. Durr's constitutional due process rights to a fair trial and to an impartial jury was violated when the trial court failed to determine through voir dire whether potential jurors could resist the natural but legally-forbidden human tendency to view Mr. Durr's failure to testify as a sign of guilt; the court further failed to elicit sufficient

information from potential jurors to facilitate the intelligent exercise of peremptory and for-cause challenges.

II.     The trial court violated Mr. Durr's Fifth and Sixth amendment rights to present a defense by excluding the statements of [NT].

III.    Where the trial court failed to give an accomplice jury instruction with regard to Heather Warddell, trial counsel rendered ineffective assistance in failing to object or propose an accomplice cautionary instruction.

IV.     Mr. Durr was denied his constitutional rights to a fair trial, properly instructed jury, and to present a defense, by the trial court's refusal to give a flight instruction with regard to Heather Warddell and Brandon Michael Ellis.

V.      Reversal of the felony murder conviction is required where the prosecution failed to prove malice, an essential element (of) felony murder.

VI.     Mr. Durr's conviction should be vacated because there was insufficient evidence to establish the elements of arson.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting

*Williams v. Taylor*, 529 U.S. 362, 409 (2000)(internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law. A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for

evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."" *Renico v. Lett*, 559 U.S. 766, 773 (2010)(finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached")(internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)(noting that the Supreme "Court has held on numerous occasions that it is not" "an unreasonable application of clearly established Federal law" "for a state court to decline to apply a specific legal rule that has not been squarely established by this Court").

## III.

### A.

Petitioner contends that his due process rights were violated when the trial court failed, during *voir dire*, to ascertain whether the jurors could resist their natural inclination to view him as guilty when he chose not to testify. Petitioner also submits additional challenges to how the trial court judge conducted *voir dire*.

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). Thus, "[W]ithout an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales–Lopez v. United States*, 451 U.S. 182, 188 (1981). The Supreme Court, however, has admonished that "[t]he adequacy of *voir dire* is not easily the subject of appellate review[,]."

*Morgan*, 504 U.S. at 730. The Supreme Court has further recognized that a state trial judge "retains great latitude in deciding what questions should be asked on *voir dire*." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). A state court's refusal to pose "constitutionally compelled" questions entitles a habeas petitioner to relief. *Id*. at 424–26. However, questions are "constitutionally compelled," for purposes of *voir dire,* only if "the trial court's failure to ask these questions [renders] the defendant's trial fundamentally unfair." *Id.* at 425–26.

The Michigan Court of Appeals, in addressing Petitioner's claim, found that the trial judge's *voir dire* was not merely perfunctory:

> Durr contends that the most egregious shortcoming in the trial court's voir dire was its failure to explore the jurors' view of defendants who exercised their right to remain silent and whether a defendant's failure to testify would influence the juror's verdict. This Court addressed this issue in *People v. Brown*, 46 Mich.App 592; 208 NW2d 590 (1973), remanded on other grounds 393 Mich. 174 (1974), and rejected the defendant's argument that the trial court erred by interrupting defense counsel's questions concerning "the jurors' feelings about defendant's right to remain silent and the presumption of innocence." *Id*. at 593–594. This Court stated:
>
>> By virtue of [the court rules], the examination of prospective jurors may be conducted by the court or, in its discretion, by the respective attorneys. The general rule is that the scope of voir dire examination of jurors rests largely in the discretion of the trial judge and his decision will not be set aside absent an abuse of discretion. *Corbin v. Hittle*, 34 Mich.App 631[; 192 NW2d 38] (1971). The purpose of voir dire is to enable the attorneys to elicit sufficient information as is necessary to develop a rational basis for excluding veniremen (whether for cause or by peremptory challenges). 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 465. The scope of voir dire herein was broad enough to enable counsel to obtain the information necessary to exercise defendant's challenges.
>>
>> Much of the voir dire was personally conducted by the trial judge. He covered the subject areas which one would expect to be of greatest concern to counsel. When two potential jurors made positive responses to certain questions the trial judge carefully interrogated them with respect to possible disqualifying factors which their initial responses might indicate the existence of. Both

veniremen were asked if they could afford defendant a fair and impartial trial based upon the evidence adduced at trial. They responded in the affirmative. Moreover, the trial court asked all jurors whether they knew of any reason which would preclude them [from] rendering a fair and impartial verdict in the case at hand. *In People v. Lockhart*, 342 Mich. 595[; 70 NW2d 802] (1955), the identical questions were asked by the trial court and the jurors' responses were held to reveal a want of prejudice. There the Supreme Court concluded the trial judge did not abuse his discretion in refusing to ask a certain question of the veniremen. *Lockhart*, *supra*, pp 599–600. By analogy, we think the trial judge did not act arbitrarily when he denied counsel the right to query the jurors with regard to two specific matters. Instead he stated what the law expected of jurors and then asked if they could conform to its dictates. This was proper. [*Id*. at 594–595 (emphasis in original, footnote omitted).]

Pursuant to *Brown*, the trial court's questioning is sufficient it (sic) if provides a rational basis to exclude veniremen.

Durr also asserts that the trial court's voir dire was "so superficial, broad, and uninsightful that it prevented the defense from making intelligent decisions" about which jurors to challenge because it did not engage in follow-up questions or present hypothetical questions. However, the trial court engaged the jurors in additional questioning when issues were raised regarding their qualifications to serve. Consequently, when an emergency room nurse indicated that her daughter was a police officer, the trial court engaged in further questioning to determine whether that would have an impact on her ability to sit as a fair and impartial juror. The record indicates that the trial court fulfilled its duty of questioning jurors regarding potential bias so that defendants' challenges could be intelligently exercised. *Tyburski*, 445 Mich. 606, 618–619. Although Durr contends that the trial court's questioning was deficient and did not raise potential hypothetical questions, he fails to delineate what additional questions should have been posed. Durr was not entitled to have the voir dire questions framed exactly as he would have liked; he was only entitled to a voir dire that allowed him to intelligently exercise his challenges, which he received. *Id*. Under the circumstances, the trial court's conduct of voir dire did not constitute an abuse of discretion. *Orlewicz*, 293 Mich.App 96, 100.

*People v. Moore*, 2014 WL 4087921, at *8–9.

Trial judges enjoy considerable discretion in determining questions to be asked in *voir dire*, and judges need not use every question submitted by counsel, but only those to which an anticipated response would afford the basis for a challenge for cause. *United States v. Fish*, 928

F.2d 185, 186 (6th Cir. 1991). The state's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than a specific inquiry into a specific prejudice feared by the defendant. *Id.* at 595; *Ham v. South Carolina*, 409 U.S. 524, 527-528 (1973). The U.S. Constitution does not entitle a defendant to have questions posed during *voir dire* specifically directed to matters that might conceivably prejudice the veniremen against him. *Ristaino v. Ross*, 424 U.S. 589, 594 (1976)(holding that a state trial court is not required to ask jurors questions directed specifically towards racial prejudice where the court asked a general bias question to the jurors); *see also United States v. Aloi*, 9 F.3d 438, 441 (6th Cir. 1993)(District court's failure to give requested *voir dire* question on defendant's right not to testify did not create risk of empaneling biased jury, given district court's *voir dire* questions and jury instructions on presumption of innocence and jury instruction that no inference could be drawn from defendant's election not to testify). Therefore, federal courts should accord state trial courts particularly wide discretion with regard to the propriety of *voir dire* questions. *Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996).

Petitioner does not identify what additional questions should have been asked by the judge or how the *voir dire* was insufficient to alert him to possible challenges for cause. Petitioner cites to the portion of the record where the trial court judge informed the jury that every defendant has the absolute right not to testify, the jury must not consider the fact that the defendant did not testify and must not let his failure to testify effect the verdict in anyway. (Tr. 10/22/12, p. 57). The judge's cautionary instruction to the jurors was sufficient to alert them to the fact that Petitioner did not have to testify, and his silence could not be used against him.

With respect to possible challenges based on peremptory grounds, the United States Supreme Court has repeatedly held that peremptory challenges are not of a federal constitutional

dimension. *See Rivera v. Illinois,* 129 S. Ct. 1446, 1454 (2009)("[B]ecause peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution."); *see also U.S. v. Martinez-Salazar,* 528 U.S. 304, 311 (2000);*Georgia v. McCollum,* 505 U.S. 42, 57 (1992)("This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial"); *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Gray v. Mississippi,* 481 U.S. 648, 663 (1987); *Stilson v. United States*, 250 U.S. 583, 586 (1919)("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges."). As a result, Petitioner would not be entitled to habeas relief on his claim that an inadequate *voir dire* precluded him from exercising all of his peremptory challenges.

Because of the wide discretion afforded state court judges regarding *voir dire* questions, the Michigan Court of Appeals' rejection of Petitioner's *voir dire* claim cannot be considered unreasonable. The Michigan Court of Appeals determined that the trial judge's *voir dire* of the prospective jurors was not perfunctory but was constitutionally adequate to uncover potentially biased jurors. Petitioner is not entitled to relief on his first claim.

**B.**

Petitioner next contends that the trial judge violated his Fifth and Sixth Amendment rights to present a defense by excluding the critical statements of NT.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted

directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Trial counsel sought to admit three statements made by [NT] shortly after the fire. The specific content of the statements was not set forth by the Michigan Court of Appeals. Petitioner described the statements as follows: "shortly after the fire, [NT's] mother, Tamala Wells, spoke with [NT] who stated that, contrary to Jessica Smith's report, she and Jessica were outside the house walking around when they first notice the fire." Petition at 18, ECF No. 1. Petitioner explained that similar accounts were given to NT's father, Ricky Tennant, and Lieutenant Dixon. *Id.* Petitioner contends that the statements were critical to his defense and should have been admitted into evidence. The statements were offered under MRE 803(24), the catch-all exception to the hearsay rule which reads as follows:

Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

*People v. Moore*, 2014 WL 4087921, at *10.

In rejecting Petitioner's claim, the Michigan Court of Appeals initially found that the statements made to NT's mother and the police were "not a matter of record because there was no specific offer of proof regarding those statements." *Moore,* 2014 WL 4087921, at *11. The Court then found that the statement made by the 4-year-old witness to her father lacked the requisite guarantees of trustworthiness to fit within the hearsay exception. *Id.* The Court noted that Rickey Tennant obtained the statement from NT after repeatedly "asking the same question all day." *Id.* The Court also found that had the child been subpoenaed, she may not have been found to be competent to testify. Moreover, the exclusion of NT's statement did not deny petitioner his right to present a defense because the statement was cumulative of testimony given by three (3) other witnesses that testified to Jessica Smith being outside the house when the fire started. (*Id.*).

The fundamental right to present a defense is not absolute; thus, evidence that is deemed insufficiently unreliable, such as hearsay evidence, is excludable even if it may be relevant to the defense. *See McCullough v. Stegall,* 17 F. App'x 292, 295 (6th Cir. 2001); *see also Allen v. Hawley,* 74 F. App'x 457, 462-63 (6th Cir. 2003). In the present case, it was reasonable for the trial judge to determine that the proposed statement given by NT was not reliable, lacked an

underlying foundation for its analysis, and that NT, who was six years old at the time of petitioner's trial, may not have been competent to testify. The Court also found that the statement made to NT's father was cumulative of testimony given by three (3) other witness who testified at Petitioner's trial.

Whether this Court would have reached the same conclusion as the state courts regarding the trustworthiness of the proffered statement is "completely irrelevant" in determining whether to grant habeas relief. *Allen,* 74 F. App'x at 463. The state trial court judge considered the circumstances surrounding the statements, such as the time at which the statement was made, the relationship between the declarant and the proposed witness, and the existence of independent corroborating evidence. Based on the state court's analysis of the facts, its conclusion that the statement was untrustworthy was not an unreasonable application of United States Supreme Court precedent, so as to entitle Petitioner to habeas relief. *Id.* As a result, the Michigan Court of Appeals reasonably found that the statement was untrustworthy and "that NT's statement would have been essentially cumulative to the other witnesses" who placed the girls outside the home at the time of the fire. *Id.* Petitioner is not entitled to relief on his second claim.

### C.

In his third claim, Petitioner contends that the trial court erred by failing to give an accomplice jury instruction with regards to Heather Wardell and that trial counsel was ineffective by failing to object or propose an accomplice cautionary instruction. In his fourth claim, Petitioner contends that the trial court erred by failing to give a modified flight instruction for Heather Warddell and Brandon Michael Ellis.

Respondent submits that Petitioner's third claim is procedurally defaulted, because Petitioner did not request such an instruction during his trial. Procedural default is not, however,

a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against Petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. The interests of judicial economy are best served by addressing the merits of Petitioner's claim, as the merits can be resolved much more easily than the procedural default question.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required on direct appeal. The question in such a collateral proceeding is whether the challenged instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).

The Michigan Court of Appeals reviewed Petitioner's third claim, pertaining to the accomplice instruction, and ineffective assistance of trial counsel claim for failing to request an accomplice instruction, for plain error apparent on the record, and found:

> [I]n the present case, it is far from clear that Warddell could be deemed an accomplice. Although Branden may have initially intended on aiding and abetting an arson at Smith's home, he was thwarted by Warddell who implored him not to proceed into the alley and fought with him the entire time defendants were in the alley and until they returned. Under the circumstances, Durr has failed to demonstrate that the trial court's failure to sua sponte provide an accomplice instruction was plain error affecting his substantial rights.

- 13 -

Additionally, an accomplice instruction would have been inconsistent with the defense theory of the case. A review of closing argument by counsel for Durr reveals that he questioned the testimony about the assaults, threats, and timing of events at the block party by Smith, Anderson, Butler, and Warddell because of their lack of consistency. He also asserted that there was no arson because the fire investigators did not find an accelerant and could not determine the cause of the fire. Counsel further questioned the witnesses' veracity in light of the failure to call the police regarding Durr's alleged assaultive contact with Smith at the party. In fact, rather than arguing that Warddell was an accomplice to Durr, counsel argued that Warddell's departure from the area and failure to contact the police rendered her version of events not credible.

The impartial evidence by a neighbor who observed Warddell's fight with Branden to prevent him from entering the alley did not support the contention that Warddell was an accomplice to the fire. Furthermore, the defense theory of the case was not that Warddell was an accomplice of Durr. Rather, Durr's theory of the case was that arson could not be established by the fire investigation, that his involvement in the arson could not be established by credible evidence, that he was falsely accused by his ex-girlfriend Smith, and that Warddell's departure from the area was indicative of her lack of credibility and possible guilt.

Accordingly, failure to give an accomplice instruction was neither plain error nor affected Durr's substantial rights. Furthermore, because the defense strategy at trial was to deny any involvement by Durr in starting the fire, trial counsel was not ineffective for failing to request the instruction. Counsel is not required to advocate a meritless position. *People v. Snider*, 239 Mich.App 393, 425; 608 NW2d 502 (2000).

*People v. Moore*, 2014 WL 4087921, at *14.

The record reflects that Petitioner threatened to burn Smith's house down during an argument at a block party. Warddell and Branden, who were at the party, followed Petitioner and his codefendant in their car after the fight to a gas station where Petitioner and his codefendant purchased a can of lighter fluid and then drove to Smith's house. When they arrived, Branden exited the car while Warddell pleaded with Branden not to follow Petitioner and his codefendant down the alley. In response, Branden yelled, punched, and hit Warddell, while Petitioner and his codefendant proceeded down the alley to Smith's house. By the time

Branden stopped hitting Warddell, Petitioner and his codefendant were saying "let's go," and running back down the alley. (T. 10/15/12, pp. 45-56).

The record clearly reflects that Warddell attempted to stop Branden from aiding and abetting the arson. Without any evidence that Warddell was involved in the arson, an accomplice instruction was unwarranted. As a result, trial counsel cannot be said to be ineffective by failing to request an accomplice instruction that was unsupported by the record.

The record also reflects that "Durr's theory of the case was that arson could not be established by the fire investigation, that his involvement in the arson could not be established by credible evidence, that he was falsely accused by his ex-girlfriend Smith, and that Warddell's departure from the area was indicative of her lack of credibility and possible guilt." *People v. Moore*, 2014 WL 4087921, at *14. Therefore, at a minimum, Petitioner would need to concede he had a plan to burn Smith's house to argue that Warddell was an accomplice. Providing an accomplice instruction would have been inconsistent with the defense's theory of the case that Petitioner advanced at his trial. Petitioner's third claim is meritless.

In his fourth claim, Petitioner asserts that he is entitled to habeas relief because the trial court refused to give a modified flight instruction concerning Heather Warddell and Brandon Michael Ellis. He alleges that the lack of such an instruction deprived him of due process and the right to present a defense.[1]

The Michigan Court of Appeals denied relief on this claim finding that the jury was sufficiently instructed on witness credibility, and that defense counsel was able to cross-examine

---

[1]Codefendant Moore argued that the flight instruction applied to both Warddell and Branden. However, Branden did not testify and was held in contempt. Any instruction related to his testimony would have been inapplicable. *People v. Moore*, 2014 WL 4087921, at **6, 16.

Warddell about her flight from the area. The court incorporated its rationale from codefendant

Moore's case, explaining as follows:

> Evidence of flight may be probative of consciousness of guilt. *People v. Coleman*, 210 Mich.App 1, 4; 532 NW2d 885 (1995). Flight includes actions such as "fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id*. However, evidence of flight may also have an intention or purpose consistent with innocence as well as guilt, and the issue presents a question for resolution by the jury. *People v. MacCullough*, 281 Mich. 15, 29–30; 274 NW 693 (1937).
>
> The standard jury instruction governing flight, CJI2d 4.4, provides:
>
> (1) There has been some evidence that the defendant [tried to run away / tried to hide / ran away / hid] after [the alleged crime / (he / she) was accused of the crime / the police arrested (him / her) / the police tried to arrest (him / her) ].
>
> (2) This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt.
>
> (3) You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind.
>
> Moore requested that the following modified instruction be presented to assist the jury in evaluating Warddell's departure from the area:
>
> (1). There has been evidence that one (or two) of the witnesses who has accused DeAndre Moore of wrong doing, has run away, tried to or did go under ground in Lansing, Michigan after being accused of perpetrating the crimes that they allege DeAndre Moore of doing.
>
> (2). A person may run away or hide because of consciousness of guilt.
>
> (3) You may decide that if true, that the witness (or witnesses), did try to run away or hide or go underground, weather [sic] it shows that he, she (or they) had a guilty state of mind them self, that motivated her, him or them to falsely shift blame and falsely accuse DeAndre Moore.
>
> The standard instruction is generally invoked when there is evidence that the defendant tried to flee after being accused of the crime, or after an arrest or attempted arrest. *See Coleman*, 210 Mich.App at 4; Moore presents the novel argument that because Warddell heard that the couple had been "accused" by "the streets," a modified flight instruction was applicable. Moore fails to present authority in support of his argument that a flight instruction may be given related

- 16 -

to testifying witnesses. Such failure could result in the abandonment of his claim. *People v. Huffman*, 266 Mich.App 354, 371; 702 NW2d 621 (2005).

Further, Moore's argument fails on the merits even if it had been properly presented. Moore's argument is essentially that Warddell or Branden falsely accused him to absolve the couple of their own wrongdoing. Warddell and Branden's flight from the area the following day was raised at trial; defense counsel cross-examined Warddell about her concerns that she or Branden would be blamed for the fire and her failure to go to the police at the time. The jury was instructed that it could consider "any bias, prejudice, or personal interest in how this case is decided" and a witness had "any special reason to lie" in determining witness credibility. We conclude that this instruction adequately protected Moore's rights, and the trial court did not abuse its discretion by declining to give Moore's modified instruction with regards to Warddell. *Kowalski*, 489 Mich. at 501–502; *Hartuniewicz*, 294 Mich.App 237 at 242.
*********************************************************************
Like Moore, Durr also argues that the trial court erred by failing to provide a modified flight instruction in relation to Warddell's alleged flight. Again, we disagree. As stated above, Warddell's flight from the area was explored at trial, and the jury was instructed appropriately regarding its determination of witness credibility. Additionally, Warddell testified that she spoke to Durr after the fire. He told her to keep her mouth shut and that he had a "crazy family," which Warddell interpreted as a threat. In light of the evidence discussed in Section II(B), *supra*, and additionally in light of Warddell's testimony that she left the area because of threats by Durr and her fear for her safety, the trial court did not abuse its discretion by concluding that the evidence did not support the modified flight instruction. *Hartuniewicz*, 294 Mich.App at 242.

*People v. Moore*, 2014 WL 4087921, at **5-6, 14 (Mich. Ct. App. Aug. 19, 2014).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner challenges the state court's decision that the jury instruction was not warranted under state law, he fails to state a claim upon which habeas relief may be granted. Federal habeas relief is unavailable for perceived violations of state law. *Estelle*, 502 U.S. at 72. State courts are the final arbiters of state law and federal courts will not intervene. *Lewis*, 497 U.S. at 780; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860.

Moreover, the trial court's refusal to instruct the jury about the flight of witnesses did not violate due process nor render the trial fundamentally unfair. The trial court properly instructed the jury on the elements of the charged offenses, the burden of proof, the evaluation of witness credibility, and other relevant matters. The requested instruction, that a witness's flight may be evidence of his guilt and evidence of motivation to falsely accuse the defendant, is not normally available under state law. Rather, the standard flight instruction concerns a defendant's flight and warns against a presumption of guilt while permitting the jury to consider the defendant's flight as some evidence of guilt. Petitioner also cites no federal law which requires such an instruction. The jury instructions, as given, were sufficient to satisfy due process and the right to a fair trial. The trial court's refusal to give the requested modified flight instruction did not deprive Petitioner of his right to present a defense.

Heather Warddell testified about her flight from the area after the incident. She stated that she and Michael Branden moved to Lansing, Michigan for several months and did not contact the police or fire investigators. She indicated that they left the area because Petitioner made comments that made her scared for her safety and people on the streets were saying that Branden was involved in the incident. (T. 10/15/2012, pp. 62-63) .

On cross examination, defense counsel challenged Warddell's credibility and version of events, and addressed the flight issue. (*Id*., pp. 92-93). During closing arguments, defense counsel argued that Heather Warddell was not credible and emphasized that when the arson investigators concluded their investigation, they could not say it was an arson. (T. 10/22/2012, pp. 30-32). The record thus indicates that Petitioner was able to present a defense. Petitioner fails to establish that the jury instructions, considered as a whole, violated his due process rights,

rendered his trial fundamentally unfair, and/or deprived him of his right to present a defense. Habeas relief is not warranted on his fourth claim.

## D.

Petitioner fifth and sixth claims will be addressed together as each challenges the sufficiency of the evidence. In his fifth claim, Petitioner contends that there was insufficient evidence of malice to support his felony-murder conviction. In his sixth claim, Petitioner alleges that the evidence was insufficient to support his arson conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a reviewing court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner claims that there was insufficient evidence to prove malice, an essential element of felony murder. Petitioner argues that even though he was in the vicinity of the crime scene, mere presence is insufficient to establish guilt. Petitioner further argues that although he made threats to his ex-girlfriend, there were no witness that testified that he carried out those threats. (Brief in Support of Habeas Petition, p. 42).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;

(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);

(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines,* 460 Mich. 750, 759; 597 N.W.2d 130 (1999)).

The Michigan Supreme Court has indicated that "[A] jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *see also Carines,* 460 Mich. at 759 (internal citation omitted). "Malice may also be inferred from the use of a deadly weapon." *Carines,* 460 Mich. at 759.

The elements of the underlying felony of arson of a dwelling house are: (1) the defendant willfully and maliciously burned a dwelling house; and (2) the defendant intended to burn the dwelling house, or intentionally committed an act that created a very high risk of burning the house, and the defendant knew of that risk and disregarded it. *People v. Dolittle*, Nos. 298235, 298236, 2011 WL 4424351, *1 (Mich. Ct. App. Sept. 22, 2011)(citing statute and *People v. Barber*, 255 Mich. App. 288, 294-95, 659 N.W.2d 674 (2003)); Mich. Comp. Laws § 750.72. Under Michigan law, circumstantial evidence, including evidence of a defendant's motive and opportunity, may be considered in an arson case. *See Bagnick v. Michigan Dept. Of Corrections*, 37 F. App'x 125, 128 (6th Cir. 2002)(citing *People v. Horowitz*, 37 Mich. App. 151, 154; 194 N.W.2d 375, 376 (1971)). "In fact, due to the usually surreptitious nature of the offense of arson, 'proofs will normally be circumstantial.'" *Id.* As the Michigan Supreme Court has observed:

> [T]here is rarely direct evidence of the actual lighting of a fire by an arsonist; rather, the evidence of arson is usually circumstantial. Such evidence is often of a negative character; that is, the criminal agency is shown by the absence of circumstances, conditions, and surroundings indicating that the fire resulted from an accidental cause.

*People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78, 83 (2000)(quoting *Fox v. State*, 179 Ind. App. 267, 277, 384 N.E. 2d 1159 (1979)).

Applying this standard, the Michigan Court of Appeals denied relief concluding that the prosecution presented sufficient evidence to support Petitioner's convictions for felony murder and arson of a dwelling house, as follows:

> Durr next argues that there was no evidence indicating that he knew that anyone would be in the home and, thus, there was insufficient evidence of malice to support his felony-murder conviction.
> ******************************************************************
> [I]n the present case, there was sufficient evidence that Durr intentionally set the arson in motion that caused the death of the two-year-old victim. Durr had a history of violence with Smith, and throughout the evening at the block party, he

cursed, threatened, and fought with her. The last physical confrontation resulted in a threat to kill Smith and a threat to burn her house down. Durr left the party angry, proceeded to a gas station where lighter fluid was obtained, went to the alley near Smith's home, and emerged from the alley in a rush, laughing with Moore. Shortly thereafter, the fire was observed. The elements of felony-murder are satisfied because the two-year-old victim was killed from the arson fire and the malice requirement was satisfied by Durr's actions in intentionally setting in motion the fire that caused the victim's death. *Id*.

*People v. Moore*, 2014 WL 4087921, at *15.

The prosecution presented sufficient evidence to support Petitioner's felony murder conviction. The testimony showed that the house fire was intentionally set by Petitioner and that a two-year-old boy who was in the house at the time of the fire died from smoke inhalation. Someone who intentionally starts a house fire creates a very high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result. In other words, the natural and probable consequence of igniting a fire in an occupied house is that people in the house may be asleep, unaware of the fire, may not discover the fire in timely manner, may be trapped or unable to quickly and easily escape the fire, and as a result may die or suffer serious bodily harm from either the fire itself or from smoke inhalation. Viewed in a light favorable to the prosecution, the testimony presented at trial was sufficient for the jury to find beyond a reasonable doubt that Petitioner had the requisite intent to support his felony murder conviction.

In his sixth claim, Petitioner alleges that he was merely present in the vicinity at the time of the arson.

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant committed, or aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F.2d at 424. "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt. In evaluating a 'mere presence' defense, a

factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. 746, 754 (E.D. Mich. 2006)(internal citation omitted).

The prosecution presented sufficient evidence to support Petitioner's conviction for arson of a dwelling house. Several witnesses testified that Petitioner had a dispute with his ex-girlfriend, Loretta Smith, at a party. Heather Warddell testified that Petitioner and his codefendant left the party together. Petitioner and his codefendant then went to a gas station, purchased lighter fluid, walked down an alley near Smith's house with the lighter fluid, came out of the alley laughing, and promptly left the scene. A fire at Smith's house ensued. Fire investigators found a lighter fluid container cap on the porch of the house. Viewed in a light most favorable to the prosecution, the testimony was sufficient for the jury to find beyond a reasonable doubt that the fire was intentionally set so as to support Petitioner's arson of a dwelling house conviction.

The state court's decision upholding Petitioner's convictions for arson and felony-murder is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. Petitioner is not entitled to relief on his sufficiency of the evidence claims.

## IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v.*

*McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Here, Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted. Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 21, 2018

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 21, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager